763 P.2d 360

**Mark McCARTY, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 17651.**

Supreme Court of New Mexico.

Sept. 27, 1988.

Rehearing Denied Nov. 15, 1988.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for petitioner.

Hal Stratton, Atty. Gen., Sharon Walton, Asst. Atty. Gen., Santa Fe, for respondent.

OPINION

RANSOM, Justice.

We granted certiorari to review the trial court's preclusion of witness testimony as a sanction against defendant Mark McCarty for failure to comply with a demand for notice of alibi. The court of appeals affirmed. Because the trial court abused its discretion in precluding testimony under the facts and circumstances of this case, we reverse.

Sometime between the late hours of May 17 and the early morning hours of May 18, 1986, Schumpert's Music Company (Schumpert's) in Roswell was burglarized. McCarty was arrested and charged with five felony offenses in connection with that burglary. Subsequently, the State filed a demand for notice of alibi pursuant to SCRA 1986, 5–508.[1] The defense did not submit a notice of alibi, but filed a witness list containing the names and addresses of two witnesses, Pat Gordon and Debbie Gilkison, without identifying them as alibi witnesses.

During the trial, defense counsel attempted to offer testimony to impeach the story of the State's key witness, Donny Chapman, to the effect that defendant left Kathy's Arcade with Keith Moore and Chapman around 9:00 p.m. or 10:00 p.m. Gordon would have testified that McCarty was at the arcade until 12:15 a.m. Before Gordon was able to testify to this fact, the State objected on the grounds that this was evidence establishing an alibi defense of which it was not notified. A sidebar conference ensued and defense counsel argued that this was not alibi evidence because the witness would not corroborate the where-

1. SCRA 1986, 5–508 provides that:

[U]pon the written demand of the district attorney, specifying as particularly as is known to the district attorney, the place, date and time of the commission of the crime charged, a defendant who intends to offer evidence of an alibi in his defense shall, not less than ten (10) days before trial or such other time as the district attorney may direct, serve upon such district attorney a notice in writing of his intention to claim such alibi.

abouts of McCarty at the time of the alleged burglary offenses, which the defense asserted occurred after 1:00 a.m. The trial judge ruled that this was evidence of an alibi and he would not permit Gordon to testify regarding time.[2] When defense counsel continued to protest, the trial judge excused the jury and heard argument on the issue. The trial judge reiterated his position that if Chapman's testimony was that McCarty left the arcade between 9:00 p.m. and 10:00 p.m., drove around a little bit, cased Schumpert's, and then burgled the place, and that Gordon was going to testify that McCarty was at the arcade until after 12:15 a.m., then that would indeed be an alibi defense. Gilkison, the other defense witness, was also precluded from testifying that she was with McCarty until around 12:30 a.m.

Alibi is a shorthand description for a defense that rests on the fact that the accused was elsewhere at the time the alleged offense took place. *State v. Horenberger*, 119 Wis.2d 237, 242, 349 N.W.2d 692 (1984); *see State v. Redwine*, 79 Or. App. 25, 27, 717 P.2d 1239, 1241 (Alibi evidence is evidence that the defendant was, at the time of the commission of the alleged offense, at a place other than the place where such offense was committed.), *cert. granted*, 301 Or. 338, 722 P.2d 737 (1986); *State v. Berg*, 697 P.2d 1365, 1367 (Mont.1985) ("An alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for the defendant to be the guilty party."). Alibi evidence focuses on the defendant's activities at the time of a specific act which is itself a violation of the criminal statute. The defendant's whereabouts during the alleged planning stages of the crime do not constitute an alibi defense for the crime itself. *Horenberger*, 119 Wis.2d at 243–44, 349 N.W.2d at 695–96.

Chapman's testimony elicited on direct examination regarding the actual time of the burglary offenses was as follows:

Q. Do you have any idea what time it was when you went, actually entered Schumpert's music store?

A. No, I didn't.

Q. Sometime either the 17th or early on the 18th?

A. I guess it was around you know 1:00 or 2:00 on the 18th but I am not sure.

As regards the events that took place after the first entry, Chapman testified that after removing the instruments from the store and placing them in McCarty's car, they drove to Moore's house where they remained for approximately one and one-half to two hours. Chapman and McCarty subsequently returned to Schumpert's and took another keyboard. McCarty then drove to his house where he and Chapman sat in the car and talked awhile before McCarty drove Chapman home at 4:42 a.m.

During the argument to the court, defense counsel agreed to go on record that the challenged testimony would not establish an alibi. McCarty had no witness to corroborate his testimony that he was at home asleep at the time the offenses occurred. Defense counsel argued that the purpose of the testimony of both defense witnesses was to impeach Chapman's testimony that he, McCarty and Moore left the arcade between 9:00 p.m. and 10:00 p.m.

In *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), the Supreme Court held that the compulsory process clause of the sixth amendment does not create an absolute bar to the preclusion of a defense witness' testimony as a sanction for violating a discovery rule requiring disclosure of witnesses. Although a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor, "the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests." *Id.* at 655. While this decision put to rest the notion that "the sixth amendment forbids the exclusion of otherwise admissible evi-

---

**2.** SCRA 1986, 5–508(C) provides that: "If defendant fails to serve a copy of such notice as herein required, the court may exclude evidence offered by such defendant for the purpose of proving an alibi * * *."

dence solely as a sanction to enforce discovery rules or orders against criminal defendants," *United States v. Davis*, 639 F.2d 239, 243 (5th Cir.1981), the facts underlying the *Taylor* court's holding suggest that preclusion is only appropriate in limited circumstances.

In *Taylor*, on the second day of trial, defense counsel made an oral motion to amend his discovery response to include two more witnesses. Defense counsel represented that he had just been informed about these witnesses and that they probably had seen the entire incident. The trial judge directed counsel to bring the witnesses in the next day, at which time he would decide whether they could testify. At the hearing, the witness "acknowledged that defense counsel had visited him at his home on the Wednesday of the week before the trial began. Thus, his testimony rather dramatically contradicted defense counsel's representations to the trial court." *Taylor*, 108 S.Ct. at 650.

> A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Confrontation Clause simply to exclude the witness' testimony.

*Id.* at 655–56.

Although the *Taylor* court declined to draft a comprehensive set of standards to guide the exercise of discretion in cases involving preclusion as a sanction, the Court did cite as one example the balancing test announced in *Fendler v. Goldsmith*, 728 F.2d 1181 (9th Cir.1983). *Taylor*, 108 S.Ct. at 655 n. 19.

> At the outset we emphasize that for a balancing test to meet Sixth Amendment standards, it must begin with a presumption against exclusion of otherwise admissible defense evidence. No other approach adequately protects the right to present a defense. *See Washington v. Texas*, [388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967)].

728 F.2d at 1188. *Fendler* addressed general criminal discovery rules, and specifically noted that the validity of the preclusion provision of the notice-of-alibi discovery rule, which is designed to deal with a particular type of evidence, was not before the court. "[T]he Supreme Court has specifically upheld such rules—though leaving open the question of what sanctions are permissible—because of the special tendency of unexpected alibi defenses to cause unfair surprise and lengthy trial delays." *Id.* at 1188 n. 12, 1190 n. 20. Unlike the dissent in this case, we do not see *Taylor* or *Fendler* as holding the balancing test inapplicable to the notice-of-alibi discovery rule. It simply was not under consideration. No generalization can be made that pretrial notice of an alibi defense is either more or less significant than notice of witnesses to be called.

The *Fendler* court gave consideration to the following factors: (1) the effectiveness of less severe sanctions, (2) the impact of preclusion on the evidence at trial and the outcome of the case, (3) the extent of prosecutorial surprise or prejudice, and (4) whether the violation was willful. *See also Escalera v. Coombe*, 826 F.2d 185 (2d Cir. 1987), *vacated and remanded*, —— U.S. —— 108 S.Ct. 1004, 98 L.Ed.2d 971 (1988). In deciding whether or not to admit alibi evidence when a proper notice has not been served by the defendant, the trial court should balance the potential for prejudice to the prosecution against the impact on the defense and whether the evidence might have been material to the outcome of the trial. *Id.* at 189–91. However, "[t]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence; the interest in the fair and efficient administration of justice; and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance." *Taylor*, 108 S.Ct. at 655.

Under the *Fendler* criteria, the factors here against levying a preclusion sanction predominate. The impact of the preclusion on the evidence at trial was significant. The jury was denied the opportunity to hear testimony from sworn witnesses that saw McCarty at the arcade during the time that Chapman testified McCarty was cruising the environs around Schumpert's and casing the store. Furthermore, the extent of prosecutorial surprise or prejudice was de minimus. During argument to the court, defense counsel asked how the State was prejudiced because the prosecutor had spoken to each witness about particular times. In response, the prosecutor admitted that it was true that she had spoken with Gordon and, briefly, with Gilkison. The prosecutor then stated she would withdraw her objection. However, the trial judge replied that he would not "make" the prosecutor withdraw the objection, and stated "I will rule in your favor, unless, if you wish to withdraw it fine, if you don't I will hold it is an alibi defense and that notice was not given."

In his explanation for his failure to comply with notice of alibi, defense counsel claimed that the demand was too vague to respond to meaningfully. The notice requested McCarty to give specific information as to the places he claimed to have been between May 17th through June 13th, 1986, in Roswell, Chaves County, during which time he stood accused of burglary, receiving stolen property, contributing to the delinquency of a minor, larceny, and conspiracy. The trial judge responded that given the various charges it would have been impossible to be more particular concerning times of the alleged offenses. Furthermore, the trial judge stated that if defense counsel required more particularity or a breakdown of the charges, he should have requested such assistance from either the district attorney or the court. The trial judge opined that a defense counsel relies at his own peril upon an excuse for failing to comply with a discovery request. We agree, and do not rest our decision on any claim that it was unreasonable for the trial court to characterize the testimony in question as alibi evidence within the scope of the demand for notice.

Although defense counsel in this case may be considered to have failed to comply strictly with the State's notice of alibi, it would not have been unreasonable for the court to have deemed testimony on the whereabouts of the defendant during planning stages for the crime as not constituting alibi evidence. Other factors militate against a finding of willful misconduct on the part of defense counsel. He did disclose McCarty's only witnesses four months prior to trial. Through its interview of McCarty's witnesses, the State was cognizant of the particular times these witnesses would testify that McCarty was present at Kathy's Arcade. Unlike the defense counsel in *Taylor*, McCarty's counsel did not attempt to gain tactical advantage by producing undisclosed witnesses immediately prior to trial. In fact, during its interview of Gordon, the State discovered evidence adverse to McCarty and subsequently called her as a rebuttal witness. "The principal reason for notice rules * * * is prevention of surprise to the state, not punishment of the accused for mere technical errors or omissions." *Alicea v. Gagnon*, 675 F.2d 913, 924 (7th Cir.1982).

"Notice-of-alibi rules * * * are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial." *Wardius v. Oregon*, 412 U.S. 470, 473, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973). These rules enhance the search for truth by ensuring both the State and the defendant have ample opportunity to investigate certain facts crucial to the determination of guilt or innocence. *Williams v. Florida*, 399 U.S. 78, 82, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446 (1970). Neither the purpose nor intent behind the notice-of-alibi rule appears to have been frustrated here. The State had the opportunity to prepare its case by interviewing disclosed witnesses and investigating facts necessary to adjudicate the guilt or innocence of the defendant.

It is clear that a trial court does have the discretion to preclude defense testimony as a sanction for failure to comply with a demand for notice of alibi. SCRA 1986, 5–508(C). Preclusion, however, constitutes a conscious mandatory distortion of the fact-finding process whenever applied. *See* Weinstein, *Some Difficulties in Devising Rules for Determining Truth in Judicial Trials,* 66 Colum.L.Rev. 223, 227 (1966). Before a defendant's sixth amendment rights are derogated as a sanction for non-compliance, a trial judge must exercise his discretion within recognized parameters. He must consider other available ways to enforce a criminal discovery rule.

Before resorting to preclusion, a trial judge should weigh not only the prejudicial effect of noncompliance on the immediate case, but also the necessity to enforce the rule to preserve the integrity of the trial process. *See Taylor,* 108 S.Ct. at 655. The trial judge should consider whether the noncompliance was a willful attempt to prevent the State from investigating facts necessary for the preparation of its case. The trial judge then must balance the resulting prejudice to the State against the materiality of the precluded testimony to the outcome of the case.

■ Here, the trial judge abused his discretion because under the facts and circumstances of this case it would be unreasonable to weigh the balance against the defendant. Defense counsel's failure to give notice of his witnesses in the context of the notice-of-alibi rule did not frustrate the presentation of the State's case. The State was able to interview the defendant's only two witnesses to discern the substance of their testimony. There was no prejudice to the State, but the precluded testimony was critical to the defense's ability to impeach the credibility of the State's key witness, Donny Chapman. Unlike the dissent to this opinion, we do not characterize the conduct of defense counsel as willful. No harm is done to the integrity of the notice-of-alibi rule by prohibiting the preclusion of witness testimony as a sanction under such circumstances.

We reverse the conviction of McCarty and remand for a new trial.

IT IS SO ORDERED.

SOSA, Senior Justice, and WALTERS, J., concur.

SCARBOROUGH, C.J., and STOWERS, J., dissent.

SCARBOROUGH, Chief Justice (dissenting).

McCarty was prosecuted for the burglary of Schumpert's Music Company in Roswell. The State filed a demand for notice of alibi. On demand the State is entitled to the pre-trial identification of the defendant's alibi witnesses. SCRA 1986, 5–508. Reciprocal discovery rules are designed to serve the ends of justice by affording both parties, as the majority observe, "the maximum possible amount of information with which to prepare their cases." McCarty failed to respond to the demand and the trial court excluded defendant's alibi evidence. The majority acknowledge that the excluded evidence was alibi evidence.

Defendant willfully failed to comply with the rule. He provided no notice to the State that he intended to introduce alibi evidence. The alibi evidence surfaced for the first time after the State had completed its case-in-chief, during the questioning of the first defense witness. The prosecutor objected and advised the court that as late as that morning she had inquired as to defense counsel's intention to present alibi evidence, and was advised there would be none from that defense witness. Defendant concedes that his noncompliance was intentional. He states that the demand for notice of alibi was so vague he was unable to frame a proper response. Defendant ignored the alibi rule providing for pre-trial discovery for the State. The majority countenance such conduct.

Confronted by the defendant's willful noncompliance with SCRA 1986, 5–508, the trial court fashioned a reasonable response which permitted both defendant's alibi witnesses to testify and excluded only their alibi testimony. The trial court did not abuse its discretion in fashioning such a

remedy in light of defendant's total failure to respond to the State's demand for notice of alibi pursuant to SCRA 1986, 5–508. The Supreme Court in *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), specifically approved total witness exclusion for intentional noncompliance with state criminal discovery rules, a much harsher remedy than the trial court utilized in this case. It is obvious from a review of the record of the court proceedings in this case that the trial court balanced the defendant's right to a full and fair trial against the competing interests of the State in avoiding surprise and delay.

The majority cites *Fendler v. Goldsmith,* 728 F.2d 1181 (9th Cir.1984), as the source of its balancing test. However, *Fendler,* like *Taylor,* did not impose standards to guide the exercise of a trial court's discretion in applying sanctions for noncompliance with discovery rules designed for specific kinds of evidence. Both *Fendler* and *Taylor* dealt with permissible sanctions for noncompliance with general reciprocal-discovery rules. *Fendler* specifically excluded a reciprocal notice-of-alibi discovery rule from the impact of its holding. *Id.* at 1190 n. 19. Nevertheless, the majority, based upon *Fendler,* create a legal presumption against the exclusion of alibi evidence even when the trial court is confronted with willful noncompliance. Such a presumption was not adopted by the Supreme Court in *Taylor* even where the noncompliance involved general criminal discovery rules. As noted by the court in *Fendler,* unexpected alibi defenses have a special tendency to cause unfair surprise and lengthy trial delays. *Id.* at 1188 n. 12. In such a case the State has an especially strong legitimate interest in securing pretrial disclosure of alibi evidence.

I also take issue with the assertion of the majority that the State had the opportunity to prepare its case without the advance notice contemplated by Rule 5–508 that defendant would introduce an alibi defense. "Given the ease with which an alibi defense can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Williams v. Florida,* 399 U.S. 78, 81, 90 S.Ct. 1893, 1895–1896, 26 L.Ed.2d 446 (1970). Contrary to the assertion of the majority, the State has no opportunity to adequately prepare to meet an alibi defense injected by a defendant at the eleventh-hour. Even when the State knows the identity of the defense witnesses, the State may still be surprised to learn that they intend to testify about an alibi. *United States v. Barron,* 575 F.2d 752, 758 (9th Cir.1978). If a trial court should permit introduction of an eleventh-hour alibi, I must presume that a continuance would be granted to allow the prosecutor to meet the defense and to comply with his duty to disclose rebuttal witnesses. *See id.* at 757.

The majority direct a trial judge to "consider other available ways to enforce a criminal discovery rule" before resorting to preclusion. The majority overlook the preventative purpose of preclusion. Preclusion of alibi evidence in the face of willful noncompliance and surprise at trial is a sanction intended not to enforce compliance with the discovery rule after a violation occurs, but to deter willful discovery violations in the first instance. Alternative sanctions would likely prove ineffective to deter violations. *See* Comment, *Alibi Notice Rules: The Preclusion Sanction as Procedural Default,* 51 U.Chi.L.Rev. 254, 276 (1984). The threat of a continuance would hardly deter violations and may even prove to be an attractive strategy to stall the trial after the prosecution has rested its case. As the Supreme Court observed in *Taylor,* "[d]efendants who are willing to fabricate a defense may also be willing to fabricate excuses for failing to comply with a discovery requirement." *Taylor,* 108 S.Ct. at 655. There is no incentive to conform to the rule if an intentional violation results in an automatic continuance or mistrial. The *Taylor* Court observed that more is at stake than just possible prejudice to the prosecution. Compliance with the notice-of-alibi rule is a reasonable requirement needed to ensure the integrity of the judicial process itself. The rule merely conditions the exercise of a defendant's rights under the sixth amendment upon timely disclosure, that is, upon the asser-

tion of the constitutional right at the appropriate point in the litigation.

The Supreme Court in *Taylor* plainly rejected the contention that every preclusion of testimony distorts the truth-seeking process. The Court recognized that alternative sanctions might well be appropriate in most cases, but concluded that "[t]here are instances in which they would perpetuate rather than limit the prejudice to the State and the adversary process." *Id.* The Court agreed that the severest sanction is appropriate in the case of "willful misconduct." *Id.* at 656. Additionally, the *Taylor* Court affirmed the ruling of the Illinois Appellate Court that " '[t]he decision of the severity of the sanction to impose on a party who violates discovery rules rests within the sound discretion of the trial court'." *Id.* at 651, (quoting, *People v. Taylor*, 141 Ill.App.3d 839, 844, 96 Ill.Dec. 189, 193, 491 N.E.2d 3, 7 (1986)). I see no abuse of discretion in this case and would, accordingly, affirm the decision of the district court and the court of appeals.

STOWERS, Justice, (dissenting).

I must disagree with the majority's holding that the trial court abused its discretion in excluding alibi testimony of two defense witnesses as a sanction for defendant's failure to comply with the notice of alibi rule.

SCRA 1986, 5–508(A) provides in relevant part "a defendant who intends to offer evidence of an alibi in his defense *shall*, not less than ten (10) days before trial ... serve upon [the] district attorney a notice in writing of his intention to claim such alibi." (emphasis added). Defendant in the instant case totally failed to comply with this rule. He did not submit a notice of alibi, but simply filed a witness list containing the names and addresses of the two witnesses in question, without identifying them in any special capacity. Because alibis are most convincing and easy to fabricate, notice of alibi statutes require a defendant to give notice to the prosecution of a defendant's intention to rely on an alibi as a defense. Such notice provides the State with the opportunity to ascertain the facts as to the credibility of the witnesses or to obtain rebuttal testimony. Annotation, *Validity and Construction of Statute Requiring Defendant in Criminal Case to Disclose Matter As To Alibi Defense*, 45 A.L.R.3d 958, 965 (1972). The alibi rule "is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." *State v. Smith*, 88 N.M. 541, 543, 543 P.2d 834, 836 (Ct.App.1975) (quoting *Williams v. Florida*, 399 U.S. 78, 82, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446 (1970)). The rationale enunciated in *Williams* exemplifies "the growing realization that disclosure, rather than suppression of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966). The notice requirement merely compels a defendant to accelerate the timing of his disclosure information which he plans to divulge at trial anyway, *Williams*, 399 U.S. at 85, 90 S.Ct. at 1893, and thereby, provides the judicial system with a better opportunity to determine the truth of the charge.

The notice of alibi rule further provides that the trial court may exclude alibi evidence offered by the defendant at trial, if the defendant failed to comply with the notice requirements. SCRA 1986, 5–508(C). The decision to exclude such testimony is discretionary. *Smith*, 88 N.M. at 544, 543 P.2d at 837. The appropriate standard of review is whether the trial court abused its discretion in ruling as it did. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983). I find no abuse of discretion here.

The record shows that not until after the State had rested its case did defense counsel make an offer of proof as to the two witnesses' testimony arguing it was not offered as alibi but rather to impeach the state's witness, Donny Chapman. Since the testimony of both Gordon and Gilkison would have directly refuted the testimony

of Chapman indicating that defendant was at a place other than the place where the crimes charged allegedly occurred, their testimony constituted alibi evidence as the trial court determined. Nonetheless, the trial court permitted the impeachment evidence by both witnesses on Chapman's general character for truthfulness. The witnesses indicated that Chapman lied and was not trustworthy.

Although it is true that Rule 5–508 permits the trial court to waive the notice requirements for good cause, defendant made no such showing. SCRA 1986, 5–508(C). First, an adjournment to obtain other witnesses who might have refuted defendant's witnesses would have unnecessarily delayed the proceedings. Defense counsel was aware of the existence of these witnesses and their proffered testimony at the time the State filed its demand for notice of alibi, but totally failed to comply with the rule and identify them as alibi witnesses. Second, both were permitted to testify on Chapman's credibility. Third, defendant did not offer a valid justification for his failure to comply with the notice requirements. Finally, and contrary to defendant's reasoning, the State was prejudiced from the moment defendant failed to notify it of an alibi defense. "Alibi" literally means "elsewhere; in another place" other than the place where the crime charged allegedly occurred. *State v. Nunn,* 113 N.J.Super. 161, 167, 273 A.2d 366, 369 (App.Div.1971); *State v. Redwine,* 79 Or.App. 25, 717 P.2d 1239, *cert. granted,* 301 Or. 338, 722 P.2d 737 (1986). "The defense of alibi has its evidential efficacy in the physical impossibility of the accused's guilt." *Nunn,* 113 N.J.Super. at 167, 273 A.2d at 369. Moreover, it is used to case a doubt on proof of the elements of the crime. *See, e.g., People v. Williamson,* 168 Cal.App.2d 735, 336 P.2d 214 (1959). Thus, in the absence of notice of an alibi defense, it is more onerous for theState to prove that there is no reasonable doubt that defendant was present at the time the crime was committed. *See State v. Smith,* 21 N.M. 173, 153 P. 256 (1915).

I can only conclude that the action of the trial court was not so clearly unreasonable in light of the surrounding circumstances to warrant interference on the ground of abuse of discretion. Any decision to the contrary renders the force of Rule 5–508, a rule which is clear and specific, a nullity.

By defendant's total failure to comply with the rule, its intent and purpose were completely frustrated and created an unfair situation for the prosecution. The basic premise remains that both sides are equally entitled to a fair trial. The effect of the majority opinion is to tilt that premise in favor of the defense, which result is neither desired or appropriate.

Furthermore, I believe that the majority opinion's reliance on *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), and *Fender v. Goldsmith,* 728 F.2d 1181 (9th Cir.1984), to find an abuse of discretion in the instant case, is misplaced. Both *Taylor* and *Fendler* involved the constitutionality of witness preclusion for failure to obey pretrial discovery rules. The case before us involves the trial court's discretion by excluding the testimony of two defense alibi witnesses as a result of defendant's complete failure to comply with Rule 5–508. *See e.g., United States v. Barron,* 575 F.2d 752 (9th Cir.1978). We held in *State v. Smith,* 88 N.M. 541, 543 P.2d 834 (Ct.App.1975), that New Mexico's alibi rule does not violate due process, the right to compulsory process or defendant's privilege against self-incrimination. Therefore, under the appropriate standard of review, abuse of discretion, I must affirm the trial court's exclusion of alibi testimony for defendant's failure to comply with the notice of alibi rule.

For these reasons, I dissent.